STILL, Appellee,

v.

HAYMAN; Jefferson County Child Support Enforcement Agency, Appellant.

[Cite as Still v. Hayman, 153 Ohio App.3d 487, 2003-Ohio-4113.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 02 JE 27.

Decided July 30, 2003.

488

John Mascio Jr., for appellee.

M. Catherine Savage Dylewski, for appellant.

VUKOVICH, Judge.

{¶ 1} Defendant-appellant Jefferson County Child Support Enforcement Agency ("CSEA") appeals from the judgment of the Jefferson County Common Pleas Court, Juvenile Division. The trial court held that the doctrine of laches barred CSEA from establishing paternity and seeking child support and reimbursement for ADC benefits from plaintiff-appellee Clyde Still Jr. This court is asked to determine whether the doctrine of laches bars the establishment of parentage and an order for reimbursement for ADC monies paid by CSEA. For the reasons stated below, the judgment of the trial court is affirmed in part, reversed in part, and remanded.

## STATEMENT OF CASE AND FACTS

{¶ 2} In 1984, Melissa Hayman and Still had a one-time sexual encounter resulting in Hayman becoming pregnant. Hayman was approximately 15 years old and Still was approximately 13 years old. During Hayman's pregnancy, Still approached her and questioned her about whether he was the father of the child. Hayman informed Still that the father was a man she had met in Arizona on vacation. None of Hayman's family, with whom Still was friends, ever indicated that he was the father. On March 3, 1985, Hayman gave birth to Amber, which would later be proven to be Still's daughter.

{¶ 3} In 1987, a couple years after Amber's birth, Hayman began receiving public assistance benefits for the minor child through the Jefferson County Department of Human Services and has continued to receive public assistance benefits on and off since that time. Before receiving public assistance benefits, Hayman was required to name the father of the minor child so that paternity and an order of support could be established. Hayman, knowing that Still was Amber's father, lied to the Department of Human Services and informed the agency that Amber's father was a man by the name of Jeff Mills and that she knew no other information about him besides his name. It is unclear what actions were taken to locate the fictitious Mills.

{¶ 4} In August 2000, when Amber was 15½, Still was told by Amber that he was her father, and in October 2000, Hayman informed CSEA that Still, not Mills, was Amber's father. Hayman told CSEA that at the time she began receiving assistance, she did not want to get into trouble, so she just picked a name for the father. Hayman further stated that she had not previously truthfully disclosed the identity of Amber's father because Still had raped her.

{¶ 5} Due to this information, genetic testing was conducted on November 14, 2000. The results indicated that there was a 99.98 percent probability that Still was Amber's biological father. In December 2000, CSEA issued an administra-

tive order establishing a parent-child relationship between Still and the minor child. Still filed a parentage complaint against Hayman requesting that the trial court bar the establishment of a parent-child relationship based on the doctrine of laches. CSEA requested to be named as a party to the action. CSEA and Hayman both then asked the court to appoint Hayman counsel. The court granted CSEA's request to be made a party but denied the request that Hayman be appointed counsel.

{¶ 6} The case proceeded to a hearing, but before the hearing began, CSEA requested that Amber be named as a party to the action and either an attorney or a guardian ad litem be appointed to represent her interests. The court considered the request but never made a ruling on the issue. The hearing proceeded with testimony from Still and Donna Anderson, a CSEA investigator. The court held that the doctrine of laches barred the mother's attempt to establish paternity and collect child support and since CSEA's rights are derived and assigned from the mother, the doctrine of laches bars CSEA's rights. CSEA timely appeals raising three assignments of error.

## ASSIGNMENT OF ERROR NO. ONE

{¶ 7} "The trial court erred in applying the doctrine of laches."

{¶ 8} "Laches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party." *Connin v. Bailey* (1984), 15 Ohio St.3d 34, 35, 15 OBR 134, 472 N.E.2d 328, quoting *Smith v. Smith* (1957), 107 Ohio App. 440, 443, 8 O.O.2d 424, 146 N.E.2d 454. Laches is predominantly a question of fact to be resolved according to the circumstances of each individual case and, as such, is within the sound discretion of the trial court. *Bitonte v. Tiffin Sav. Bank* (1989), 65 Ohio App.3d 734, 739, 585 N.E.2d 460. Therefore, we must examine whether the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

{¶ 9} The trial court held that the doctrine of laches barred Hayman from establishing paternity and collecting child support from Still. It further found that CSEA's rights are derived from Hayman and "the doctrine of Laches applies and that the Plaintiff, Clyde Still Jr., does not owe a duty of support for the child, Amber Hayman, a child born on March 3, 1985, because he has materially been deprived of his parental right in raising his daughter and in having visitation and other contact with the child." Therefore, according to the trial court, if Hayman is barred from establishing paternity and a support order, so is CSEA, since only CSEA has the rights Hayman assigned to it.

{¶ 10} CSEA argues that the trial court's holding is incorrect. CSEA contends that laches is not a viable defense against any state agency. Furthermore, CSEA insists that the elements necessary to establish the doctrine of laches have not been met.

{¶ 11} First, we will address the argument that laches cannot be imputed against the state. It is true that generally laches will not apply against the state when such an action is contrary to an ascertainable public interest. *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 146, 555 N.E.2d 630. The rationale behind this rule is one of public policy; the public should not suffer due to the inaction of public officials. *Campbell v. Campbell* (1993), 87 Ohio App.3d 48, 50, 621 N.E.2d 853, citing 28 American Jurisprudence 2d (1966) 782, 787, Estoppel and Waiver, Sections 122 and 124. Despite this rationale, the imposition of an absolute bar to the availability of laches as a legal defense against the state has never been held by the Ohio Supreme Court. *Adams Cty. Child Support Enforcement Agency v. Osborne* (May 3, 1996), 4th Dist. No. 95CA592, 1996 WL 230038 (stating that the trial court abused its discretion by failing to find that the doctrine of laches bars CSEA from seeking child support under certain facts). Instead, it has been held that laches is not applicable under the specific facts of a case. Id., citing *Athens Cty. Prop. Owners Assn. v. Athens* (Aug. 26, 1992), 4th Dist. No. 1482, 1992 WL 209497. For example, the Ohio Supreme Court has held that laches may be applicable in parentage actions but only if material prejudice is shown. *Wright v. Oliver* (1988), 35 Ohio St.3d 10, 12, 517 N.E.2d 883 (holding that material prejudice was not present under the facts; however, an agency of the state was not a party to the action). Furthermore, the Fourth Appellate District has held that laches bars CSEA from establishing a reimbursement order for ADC monies paid when CSEA is the actual cause of the delay and prejudice. *Adams,* 4th Dist. No. 95CA592 (stating the mother informed CSEA that the child's father was one of three men, which included appellant; however, CSEA waited 14 years before proceeding to name appellant as the father and seek a reimbursement and child support order). From the foregoing, we conclude that there is no absolute prohibition against applying the doctrine of laches against the state. Instead, the use of the doctrine against the state is disfavored but will be applied when general public-policy interests against the application of the doctrine of laches are outweighed by other public-policy interests served by applying the doctrine and when the elements of laches are met.

{¶ 12} In accordance with that view, we must determine whether, in the case at hand, laches is applicable against CSEA in the establishment of paternity. A strong public policy exists that it is in the child's interest that a parent-child relationship be formed. *Liptay v. Feruski* (Jan. 13, 1994), 8th Dist. No. 64557,

1994 WL 11323. See *Crago v. Kinzie* (2000), 106 Ohio Misc.2d 51, 69, 733 N.E.2d 1219 (discussing disestablishment of paternity, the court stated that "it is inequitable and against public policy for a child who is a citizen of Ohio to be subjected to becoming filius nullius or 'no one's son' "). Moreover, public policy dictates that a parent is responsible to provide for the health, maintenance, welfare, and well-being of his child. *Lewis v. Chapin* (1994), 93 Ohio App.3d 695, 702, 639 N.E.2d 848 (stating that it is a principle of natural law that a parent is responsible for the well-being of his child). In accordance with these public policies, it can be concluded that Ohio favors the establishment of a parent-child relationship when it is possible. Prior to the child turning the age of majority, a parent-child relationship can be established through court-ordered visitation. See *State ex rel. Donovan v. Zajac* (1998), 125 Ohio App.3d 245, 251, 708 N.E.2d 254 (stating no prejudice results by not having a relationship with the child when visitation could have been ordered). Accordingly, the public-policy interest of establishing a parent-child relationship when the child is still a minor at the time the father is put on notice that he may be the father is not served by applying the doctrine of laches.

{¶ 13} Here, Still was not informed that he was Amber's father until Amber was 15½ years old. Due to her age, a parent-child relationship could be established through court-ordered visitation and Still could have the ability to become involved in her life. Therefore, given the above-stated public policy, laches is not applicable against the paternity action in this situation.

{¶ 14} However, even if laches is an applicable defense against the paternity action, the elements have not been met in this situation. To successfully assert a doctrine-of-laches claim, a party must prove that there has been an unreasonable delay in asserting the claim and that the delay caused the party material prejudice. *Adams*, 4th Dist. No. 95CA592, citing *Ferree v. Sparks* (1991), 77 Ohio App.3d 185, 601 N.E.2d 568. "Delay in asserting a right does not of itself constitute laches." *State ex rel. Scioto Cty. Child Support Enforcement Agency v. Gardner* (1996), 113 Ohio App.3d 46, 57, 680 N.E.2d 221, quoting *Smith v. Smith* (1959), 168 Ohio St. 447, 7 O.O.2d 276, 156 N.E.2d 113, paragraph three of the syllabus. Rather, the person for whose benefit the doctrine will operate has to demonstrate that he or she has been materially prejudiced by the unreasonable and unexplained delay of the person asserting the claim. *Connin*, 15 Ohio St.3d 34, 15 OBR 134, 472 N.E.2d 328.

{¶ 15} The trial court held that an unreasonable delay occurred. Neither CSEA nor Still was told until Amber was 15½ years old that Still was her father. In fact, Hayman deliberately lied to both CSEA and Still about the identity of Amber's father. CSEA asserts that this 15½-year delay was not an unreasonable delay given that Hayman claimed that she did not divulge Still's name because he

had raped her. The only testimony that Still raped Hayman came from the CSEA investigator; Still denied the allegation. Therefore, it became a credibility issue. The trial court was in the best position to view the voice inflections and demeanor of the witnesses. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. It was not an abuse of discretion for the trial court to find that the delay was an unreasonable delay. An unreasonable delay, however, is only the first step in determining whether the doctrine of laches should be triggered. The next step is to determine whether the delay caused Still any material prejudice.

{¶ 16} Material prejudice does not result when a parent-child relationship can be formed while the child is still a minor. See *Park v. Ambrose* (1993), 85 Ohio App.3d 179, 185, 619 N.E.2d 469 (parentage action filed after child turned age of majority; therefore, laches was applicable); *Donovan*, 125 Ohio App.3d at 251, 708 N.E.2d 254 (stating that this case is distinguishable from *Park* because in *Park* the father was not informed that he was the father until the child was no longer a minor, but in this case the father was on notice twice prior to the child's attaining the age of majority, once from the mother and the other time occurred when he was named in the bastardy action). Furthermore, laches bars CSEA from establishing parentage after the child has reached the age of majority. *Adams*, 4th Dist. No. 95CA92. However, if paternity was acknowledged prior to the paternity action and that party either sought to prevent establishment of a parent-child relationship or the avoidance of child-support arrearage upon the theory that in such cases the decision not to be involved in the child's life was voluntary, laches does not bar paternity because material prejudice does not exist. *Scioto*, 113 Ohio App.3d at 57, 680 N.E.2d 221. Consequently, in most situations material prejudice will not be found when parentage is sought to be established while the child is a minor. Further in support of this position is the public policy stated above that supports the establishment of a parent-child relationship when it can be formed.

{¶ 17} As explained earlier, Still was not informed that he was Amber's father until Amber was 15½ years old. Due to her age, a parent-child relationship could be established through court-ordered visitation. Therefore, material prejudice is not present in this case. While we acknowledge that Still has been denied the ability to raise Amber for 15½ years, once he discovered that he was the father he could become involved in her life. Between the ages of 15½ to 18, there is still an amount of rearing that must be done. As such, the trial court abused its discretion in determining that the establishment of paternity was barred by the doctrine of laches.

{¶ 18} The trial court also held that an order for reimbursement of ADC monies paid was also barred by laches due to the unreasonable delay and

material prejudice. Public policy states that a parent is responsible to provide for the health, maintenance, welfare, and well-being of his child. *Lewis,* 93 Ohio App.3d at 702, 639 N.E.2d 848. Incumbent in this policy is that the parent have the ability to become involved in his child's life. In the facts before this court, Still was not permitted this opportunity; instead, he was deliberately lied to by Hayman as to the parentage of Amber. Furthermore, Hayman deliberately lied to CSEA about the parentage of Amber, thus removing another opportunity for Still to become involved in Amber's life. As such, the doctrine of laches may be applicable against CSEA's attempt to seek reimbursement for ADC monies, if the elements of laches can be met.

{¶ 19} As concluded above, the trial court did not abuse its discretion by determining that the delay was unreasonable. Thus, the determination of whether laches bars a reimbursement order is dependent upon whether the trial court abused its discretion by finding material prejudice. We sympathize and agree with the trial court that given these specific facts it is inequitable to require Still to repay ADC monies when he was deliberately lied to by the mother about him being the father of Amber. Still was denied the ability to become involved in Amber's life for 15½ years. Ordering a parent to pay retroactive child support for a child he had no knowledge of and was deliberately lied to about being the father of, suggests that the only contribution he could have made to this child's life is through monetary support. The noncustodial parent is more than a mere money machine. *Park,* 85 Ohio App.3d at 185, 619 N.E.2d 469. Each parent can contribute to the well-being of the child regardless of which one has custody. Id. The prejudice to the custodial parent who receives no support is obvious, so is the prejudice to the noncustodial parent who is denied any input to the child's rearing. Id.

{¶ 20} We acknowledge that a father's incurrence of obligations that he would not have undertaken if he had been responsible for the child's support does not result in material prejudice. *Wright,* 35 Ohio St.3d at 12, 517 N.E.2d 883. However, the situation at hand is different from the situation where a father chooses not to support this child, the mother waits years before seeking an enforcement order, and the father claims that the delay in asserting her right resulted in material prejudice. This situation is more closely analogous to a case in the Eleventh Appellate District, *Bassett v. Bassett,* 11th Dist. No. 2001–T–0129, 2002-Ohio-6587, 2002 WL 31716659 (appeal not accepted for review in *Bassett v. Bassett,* 98 Ohio St.3d 1514, 2003-Ohio-1572, 786 N.E.2d 63). In *Bassett,* an order of child support was in effect, but the father stopped paying the child support because the mother concealed the whereabouts of the child, thus making it impossible for him to enforce his visitation rights. Due to this concealment, the father decided not to file a motion to terminate or suspend his child-support payment, which he was permitted to do by statute. The Eleventh

District held that the concealment of his child resulted in prejudice because it interfered with his visitation and resulted in him being "obligated for more support than he would have if [the mother] had not concealed the child." Id. at ¶ 26. Therefore the mother's delay in asserting the claim for past child support resulted in a change of position for the father and constituted material prejudice. Id. at ¶ 26. Likewise in the case at hand, Still was denied knowing the identity of his child and the opportunity to enforce visitation. The 15½-year delay in informing Still that Amber was his child and seeking support resulted in a change of position for him and thus constituted material prejudice. Therefore, upon remand, any claim for retroactive child support or reimbursement of ADC monies is barred by the doctrine of laches.

{¶ 21} The trial court's judgment that paternity could not be established is contrary to law and, as such, the trial court abused its discretion. However, the trial court did not abuse its discretion in asserting that retroactive child support or an order for reimbursement of ADC monies is barred by laches. This assignment of error has some merit.

## ASSIGNMENT OF ERROR NO. TWO

{¶ 22} "The trial court erred in failing to appoint legal counsel for defendant Melissa M. Hayman."

{¶ 23} CSEA argues that the appointment of counsel for indigent parties in juvenile proceedings is mandatory and that the trial court erred by failing to appoint Hayman counsel. During the proceedings, both CSEA and Hayman requested court-appointed counsel for Hayman based upon her claim of indigency. The trial court, without determining whether she was indigent, denied the request, stating:

{¶ 24} "They're—not going to be able to appoint an attorney for her. The attorney account is in the red per the action of the Commissioners. So, I'm not going to be able to do that."

{¶ 25} CSEA's assertion is correct: counsel should have been appointed. Juv.R. 4(A) requires that all parties to juvenile proceedings have the right to have counsel appointed if they are indigent. *State ex rel. Asberry v. Payne* (1998), 82 Ohio St.3d 44, 48–49, 693 N.E.2d 794; *McKinney v. McClure* (1995), 102 Ohio App.3d 165, 166–67, 656 N.E.2d 1310. Juv.R. 2(Y) defines "party" to a juvenile proceeding to include the parents of the child who is subject to the proceedings. The plain language of these rules indicates that Hayman is a party and therefore is entitled to court-appointed counsel if she is found to be indigent. The trial court is not permitted to deny the mandatory requirement dictated by the rules of procedure because there are no funds in the attorney account. Accordingly, the trial court erred when it failed to determine whether Hayman was indigent and appoint counsel if she met the indigency requirement.

{¶ 26} However, regardless of this error, CSEA lacks standing to raise this issue on appeal. Pursuant to the common-law doctrine of standing, only those parties who can demonstrate a present interest in the subject matter of the litigation and who have been prejudiced by the trial court's decision have the right to file an appeal. *Jenkins v. Gallipolis* (1998), 128 Ohio App.3d 376, 381, 715 N.E.2d 196, citing *Willoughby Hills v. C.C. Bar's Sahara, Inc.* (1992), 64 Ohio St.3d 24, 26, 591 N.E.2d 1203. While CSEA can demonstrate an interest in the litigation, it has failed to assert a plausible explanation as to how it has been prejudiced by the trial court's failure to appoint counsel for Hayman. The denial of court-appointed counsel for Hayman did not affect the right of CSEA to assert its claim that laches does not bar the establishment of paternity or the issuance of a child-support order under the facts presented. CSEA's claim may be derivative upon Hayman's claim, but CSEA could have subpoenaed Hayman to offer her testimony as to why the delay was reasonable and how material prejudice did not occur. But even without her testimony, CSEA presented both of those explanations. CSEA offered its knowledge of the alleged rape and, therefore, in its opinion, the cause of a reasonable delay. CSEA also argued that Amber was still a minor and no material prejudice resulted because a parent-child relationship could still be established through court-ordered visitation. As such, prejudice to CSEA was not shown.

{¶ 27} Accordingly, we hold that even though the trial court committed error by failing to appoint counsel upon Hayman's request, Hayman, not CSEA, has standing to raise this issue on appeal. Hayman filed no appeal in this case, nor did she object to the trial court's denial of counsel. Therefore, the error is not reviewable and this assignment of error is without merit.

### ASSIGNMENT OF ERROR NO. THREE

{¶ 28} "The trial court erred in failing to determine whether minor child Amber Hayman is a party to the action who is entitled to legal counsel, including court-appointed counsel if indigent or if the child's interests conflict with those of defendant Hayman."

{¶ 29} During the proceedings, CSEA requested that Amber be named as a party to the suit and the appointment of either an attorney or a guardian ad litem to represent her interests. The trial court took the matter under advisement but never ruled on the issue. CSEA claims that this resulted in prejudicial error.

{¶ 30} R.C. 3111.07(A) states that the "child shall be made a party to the action unless a party shows good cause for not doing so." Juv.R. 2(Y) also states that a party in a juvenile proceeding includes the child who is the subject of the

proceeding. Amber was the subject of the paternity and support proceedings before the court. In accordance with the statute and rule, Amber was required to be named as a party. Still claims that Amber's rights are not prejudiced by her not being named as a party or being appointed counsel because the actions of the mother cannot be imputed to the child as a bar for the child's claim for recovery of support. *Park*, 85 Ohio App.3d at 185, 619 N.E.2d 469, citing *M.A.D. v. P.R.* (Minn. 1979), 277 N.W.2d 27, 30. This statement is accurate and may constitute good cause for the failure to name Amber as a party.

{¶ 31} Nevertheless, even if good cause does not exist, the failure to name Amber as a party resulted in harmless error because even if she was a party, the trial court was not required under these facts to appoint her either counsel or a guardian ad litem. The appointment of counsel for a child is mandatory if the mother's interests conflict with those of the child. R.C. 3111.07(A). If this situation does not arise, the language in the statute does not suggest that the appointment of counsel is mandatory. Since Amber's interests do not appear to conflict with either Hayman's or CSEA's interests, appointment of counsel is unnecessary. Public policy dictates that the child's interests are "those which seek to establish a parent-child relationship." *Liptay*, 8th Dist. No. 64557. CSEA and Hayman, from what the record discloses, were in favor of the establishment of a parent-child relationship between Still and Amber and for ordered child support. Neither CSEA nor Hayman was looking for a compromised agreement that would not establish paternity. See *Ransome v. Lampman* (1995), 103 Ohio App.3d 8, 17, 658 N.E.2d 313 (indicating that if a compromise agreement were sought then the interests of the child would not coincide with the interests of CSEA or the mother). Therefore, even if Amber had been named as a party to the action, appointment of counsel would not have been required.

{¶ 32} Although Amber should have been named as a party to the suit, the failure to name her did not result in prejudice, since the appointment of counsel would not have been required. Therefore, any error the trial court may have committed resulted in harmless error.

{¶ 33} For the foregoing reasons, the judgment of the trial court is hereby affirmed in part, reversed in part, and remanded. The trial court abused its discretion by holding that the establishment of paternity was barred by the doctrine of laches. But the trial court correctly concluded that laches bars an order for reimbursement of ADC monies paid. The case is remanded for further proceedings according to law and consistent with this court's opinion.

> Judgment affirmed in part,
> reversed in part
> and cause remanded.

GENE DONOFRIO and DEGENARO, JJ., concur.