OPINION
{¶ 1} Appellant, the Monroe County Child Support Enforcement Agency, appeals from a Monroe County Common Pleas Court judgment denying its motion for a lump sum judgment from defendant-appellee, Craig Ullman, for previous aid to dependent children payments made by the State of Ohio to appellee's children.
 {¶ 2} Appellee was married to plaintiff, Sherry Stout. They share two children. Both children are now emancipated. On March 6, 1986, appellee and Mrs. Stout were granted a divorce. The parties initially had a shared parenting agreement. However, the court granted Mrs. Stout custody of the children in December 1993. In February 1994, the court ordered appellee to pay monthly child support to Mrs. Stout. Appellant was not a party to these proceedings.
 {¶ 3} Following that order, Mrs. Stout moved for contempt enforcement of the support order. Extensive litigation followed resulting in an appeal to this court. See Ullman v. Ullman (Sep. 19, 1997), 7th Dist No. 768. Again, appellant was not a party to these proceedings.
 {¶ 4} On April 30, 1998, the trial court approved and journalized an agreed judgment entry between Mrs. Stout and appellee resolving pending motions. Section 3 of the entry stated, "[a]ny support arrearages are hereby deemed to be fully satisfied." Appellant was not a party to this judgment entry.
 {¶ 5} On September 16, 2003, appellant filed a motion for contempt, lump sum judgment, and other relief in the amount of $7,944.49 regarding an arrearage appellee allegedly owed to appellant at that time. It alleged that appellant had failed to support his children as he was ordered to do by the court. As a result, appellant asserted that the state paid Mrs. Stout public assistance for the support of the children.
 {¶ 6} The trial court held a hearing on the matter. It recognized its April 30, 1998 order and acknowledged that any support arrearages as of that date were fully satisfied. The court then calculated the amount of support appellee had paid since April 30, 1998, and found that it reflected an overpayment of $227.97. The court ordered appellant to pay appellee this $227.97. The court denied appellant's request for a finding of arrearage and lump sum judgment concerning the aid to dependent children (ADC) payments made by the state before the April 30, 1998 judgment entry. Appellant filed a timely notice of appeal from this judgment.
 {¶ 7} Appellant raises one assignment of error, which states:
 {¶ 8} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN RULING THAT CHILD SUPPORT ARREARAGES ASSIGNED TO THE STATE OF OHIO HAD BEEN DEEMED FULLY SATISFIED, THEREBY DISCHARGING DEFENDANT/APPELLEE CRAIG ULLMAN FROM LIABILITY FOR REIMBURSEMENT OF FUNDS PAID BY THE STATE OF OHIO TO SUPPORT HIS CHILDREN."
 {¶ 9} Appellant argues that the April 30, 1998 judgment entry does not apply to its action against appellee because under R.C. 5107.20 it is entitled to recover from appellee the ADC payments that it made to Mrs. Stout. Appellant maintains that receiving ADC payments from it constitutes an assignment under R.C. 5107.20. It contends that, because of this assignment, the person responsible for providing support is obligated to pay the state for the amount of cash assistance provided to their children. R.C. 5107.20.
 {¶ 10} Appellee first argues that appellant did not have standing to bring this action. Thus, we must first determine whether appellant has standing. Only those parties who can demonstrate a present interest in the subject matter of the litigation and who have been prejudiced by the court's decision have standing to file an appeal. Still v. Hayman,153 Ohio App.3d 487, 794 N.E.2d 751, 2003-Ohio-4113, at ¶ 26.
 {¶ 11} In examining the CSEA's standing to bring an action to recover child support paid by the state, the Eighth District has noted:
 {¶ 12} "R.C. 5107.07 requires recipients of ADC benefits to assign to DHS their rights to child support as a condition for receiving ADC. As a result of this assignment, DHS has authority to commence an action on behalf of the state to sue for a money judgment for any support actually paid by DHS. In effect, R.C. 5107.07 transfers to DHS the power of the `parent' to bring such actions and vests in the state a `real interest' sufficient to give it standing, even if R.C. 2151.231 does not specifically list it." State ex rel. Lamier v. Lamier (1995),105 Ohio App.3d 797, 801, 664 N.E.2d 1384.
 {¶ 13} R.C. 5107.07 has since been replaced by R.C. 5107.20. However, the two statutes are substantially similar. R.C. 5107.20 provides, in relevant part:
 {¶ 14} "Participation in Ohio works first constitutes an assignment to the department of job and family services of any rights members of an assistance group have to support from any other person, excluding medical support assigned pursuant to section 5101.59 of the Revised Code. The rights to support assigned to the department pursuant to this section constitute an obligation of the person who is responsible for providing the support to the state for the amount of cash assistance provided to the assistance group."
 {¶ 15} This statute gives appellant standing to bring an action to collect ADC payments paid by the state to appellee's children. Thus, we must move on to determine whether the trial court properly determined that appellant was not entitled to recover any money from appellee.
 {¶ 16} R.C. 5107.20 further provides, "[t]he office of child support in the department of job and family services shall collect and distribute support payments owed to Ohio works first participants, whether assigned to the department or unassigned * * *."
 {¶ 17} Here the question is whether the agreed judgment entry between appellee and Mrs. Stout, which deemed any support arrearages fully satisfied, prevents appellant from recovering ADC payments made to appellee's children when he failed to support them. Several cases are instructive on this question.
 {¶ 18} In Strawser v. Strawser (Sep. 9, 1992), 2d Dist. No. 91-CA-68, the parties separated and the court granted temporary custody of the children to their mother. The mother received ADC payments on behalf of one of the children. In the divorce judgment entry, the court stated that the father's motion charging the mother with contempt was withdrawn "and the Bureau of Support is directed to cause its records to reflect the fact that [the father] is, at the date of this Decree, fully current in his obligations for the support of the said minor child." Sometime later, the CSEA intercepted the father's federal income tax returns, claiming it had a right to them under an assignment of rights by the mother pursuant to R.C. 5107.07 for assistance the state paid to her. The father filed a motion for contempt against the CSEA arguing that it had no right to his income tax refund because its rights, if any, were founded on those of the mother as determined in the divorce decree. The trial court dismissed the father's motion and he appealed.
 {¶ 19} The Second District concluded that the "fact" that the father was current in child support obligations at the time of the divorce was "more properly, a fiction reflecting the private bargaining and agreement of the parties in settlement of their respective claims against one another." Id. Relying on R.C. 5107.07, the court noted that when a parent accepts aid for the benefit of a child he or she assigns to the department of human services any rights he or she has to receive support from any other person. Id. Furthermore, the court stated that, contrary to the father's arguments, an assignment created by R.C. 5107.07 is automatic. Id. The court concluded:
 {¶ 20} "The assignment is also complete, and creates a claim enforceable by the CSEA for reimbursement of any monies it has paid since the time of the assignment. Having made a complete assignment, the assignor has no authority to subsequently waive, modify, or compromise the right assigned. The assignor is not in privity with the CSEA. Therefore, any claim by CSEA is not limited by a court order in a proceeding subsequent to the assignment in which CSEA was not joined as a party. Ohio State Bar Association v. Weaver (1975), 41 Ohio St.2d 97." Id.
 {¶ 21} Accordingly, the court affirmed the trial court's judgment.
 {¶ 22} Additionally, a similar situation existed in Campbell v.Campbell (1993), 87 Ohio App.3d 48, 621 N.E.2d 853. In that case, the parties divorced and the court granted the mother custody of the child and ordered the father to pay child support. The father accumulated arrearages and the mother began receiving public assistance for the child. When the mother remarried, she entered into an agreement with the father whereby he consented to the adoption of the child by the mother's new husband and she released him from all past and future support obligations. Almost ten years later, the CSEA informed the father that he owed $5,700 in welfare arrears. The CSEA then filed a contempt motion because the father had failed to seek employment. The trial court found that as a matter of equity, the arrearage should be discharged.
 {¶ 23} The CSEA appealed. Because the trial court's judgment did not give reasons for its decision, the Ninth District assumed that it based its decision on the equitable defenses of laches, estoppel, or implied waiver because the CSEA had been inactive in pursuing the arrearages for ten years. The court concluded that none of these defenses applied against the CSEA. The court observed that the defenses of laches and estoppel did not apply against the state, its agencies, or agents when exercising governmental functions. Id. at 50. It noted that the rationale behind this rule is based on public policy because the public should not suffer due to the inaction of public officials. Id. The court reasoned that this concept applied equally to the defense of waiver. Id. Waiver applies to individuals who freely waive their own rights. Id. The court concluded that the public interest in recouping the owed arrearages may not be waived by CSEA employees. Id. Thus, the court reversed the trial court's decision.
 {¶ 24} And in Mizell v. Mizell (Dec. 24, 2001), 7th Dist. No. 00-JE-30, this court examined the issue. After their divorce, the parties orally agreed that if the father did not exercise his visitation, he would no longer have to pay child support. The mother subsequently began receiving ADC. Some time later, the CSEA brought an action against the father for support it paid to the mother. The trial court found the state was entitled to collect the arrearages. The father appealed and argued, among other things, that his agreement with the mother should be binding as it pertained to past obligations that should have been discharged by their agreement. This court noted, however, that the mother was not the real party in interest. Id. We stated that it was "wholly irrelevant that there existed a mutual agreement between those two parties as the mother assigned her rights to collect child support to the CSEA." Relying on R.C. 5107.07, we reasoned that the mother's acceptance of ADC constituted an assignment of her rights to the CSEA, which the CSEA could collect from an obligor spouse state funds paid for a child's welfare. Id. Thus, we affirmed the trial court's judgment.
 {¶ 25} Like the fathers in Strawser, Campbell, and Mizell, appellee contends that the agreed judgment entry in this case controls because the court ordered, "any support arrearages are deemed to be fully satisfied." As the cases discussed above demonstrate, however, this agreement does not control appellee's obligation to repay appellant for ADC payments made on behalf of his children.
 {¶ 26} In each of the above cases, the parties entered into agreements that seemingly resolved all child support issues. However, the courts still required the obligors to reimburse the state for ADC payments. InStrawser, the trial court stated that the obligor was fully current in his obligations of support, but the Second District held the CSEA was entitled to reimbursement of ADC payments. In Campbell, the Ninth District found that no defenses applied against the CSEA, despite the almost ten-year delay in attempting to recoup ADC payments. And inMizell, we stated that the obligee assigned her right to receive child support when she applied for ADC payments. Accordingly, the above decisions lead us to conclude that appellant is entitled to collect the arrearages from ADC payments regardless of the agreement between appellee and Mrs. Stout.
 {¶ 27} We must also briefly address appellee's contention that because he had no notice of the assignment when he entered into the agreement with Mrs. Stout, the assignment cannot be enforced against him. Appellee relies on Schroeder v. Schroeder (Dec. 28, 1994), 1st Dist. No. C-930922, for support. In Schroeder, the CSEA appealed the trial court's decision that the father was not accountable for welfare benefits paid to the mother for their children. The trial court found that the assignment to the state was not enforceable because there was no evidence that the father received notice of it before he reached an agreement with the mother whereby he provided consent for adoption by her new husband in return for her promise to waive all rights to child support "past, present and future." The First District affirmed. It reasoned that since the father had no notice of the assignment before entering into the agreement with the mother, he could not be required to pay the state for any arrearage. The court held, "that notice of the assignment of the support rights accruing to Laura McComas pursuant to her divorce from Schroeder was a condition precedent to the enforcement of the assignment against Schroeder directly." Id. The court distinguished its case fromStrawser, supra. It reasoned that, "[u]nlike the present case, Strawser
involved no separate agreement where the obligor was induced by the assignor to provide value for a purported discharge of the assigned rights, and there was further in Strawser some separate reliance placed by the court on the obligor's independent legal duty, apart from the child-support obligations arising from his divorce, to provide support directly to his children." Id.
 {¶ 28} While Strawser may be distinguishable from the case at bar for the reasons stated in Schroeder, these reasons do not apply to distinguish Campbell, and more importantly Mizell. In both of those cases, like the present case, the father entered into an agreement that included a finding that his child support obligations were discharged. And there is no indication that in either of those cases the father was given notice of the assignment of rights to the CSEA. Thus, appellee's argument regarding lack of notice is not well taken.
 {¶ 29} Public policy also urges enforcement of the arrearage payment to appellant. The Ohio Supreme Court has held, "[t]he state has a strong interest in ensuring the enforcement of child support obligations."Cramer v. Petrie (1994), 70 Ohio St.3d 131, 135, 637 N.E.2d 882. Furthermore, in Strawser, the court held that the obligor owed a duty to the public of saving it from the expense of supporting his children and this duty could not be affected by an agreement he made with another.Strawser, supra.
 {¶ 30} Thus, it is clear that appellant is entitled to collect arrearages from appellee for the ADC payments it made to Mrs. Stout on the children's behalf. However, the record does not provide evidentiary support for the exact amount appellee owes. At the hearing, Ruth Shreve, a Monroe County Job and Family Services employee, simply stated that the amount of the arrearage owed to the state was $2,679.73. (Tr. 6). She did not testify where this amount came from or how she arrived at this figure. Thus, upon remand, the trial court should hold a hearing to determine the amount appellee owes to the state for the ADC payments it made for his children. Accordingly, appellant's assignment of error has merit.
 {¶ 31} For the reasons stated above, the trial court's judgment is hereby reversed and remanded for a hearing to establish the amount of arrearages appellee owes.
Waite, J., concurs.
DeGenaro, J., concurs.