OPINION
{¶ 1} Plaintiff-appellant-cross-appellee, Connolly Construction Co. (hereinafter "Connolly"), appeals the judgment of the Union County Court of Common Pleas directing a verdict in favor of defendant-appellees-cross-appellants, Roger and Sandy Yoder (hereinafter "Yoders"), and determining that certain restrictive covenants involved in the construction of the Yoders' home were unenforceable.
 {¶ 2} The testimony and documentary exhibits offered in a trial to the court reveal that the Yoders purchased a lot in the Green Pastures Subdivision in Marysville, Ohio, from Connolly in July 2002. The Yoders' deed was subject to recorded covenants which were referenced therein. Both the covenants and Yoders' deed were properly recorded in the Union County Recorder's Office.
 {¶ 3} According to the recorded covenants, they were established "to promote the general welfare, recreation, health, safety, enjoyment and preservation of values for the benefit of owners and lots within the Phases of Green Pastures * * *." One of the covenants required the approval by an Architectural Review Committee ("Committee") of building plans before construction could take place on the lot, and it gave the Committee discretion to approve the exterior materials used in Green Pastures.
 {¶ 4} In furtherance of the covenants, the Committee drafted Architectural Review Guidelines ("Guidelines") to provide further detail and guidance during plan review. The Guidelines specified, in pertinent part, that only certain types of exterior finish were permitted on homes, that the same exterior finish that is applied on the front of the house must be used on the sides, and that siding may be used in horizontal bands only.
 {¶ 5} Shortly after they purchased their lot, the Yoders submitted their building plans for approval to the Committee. The Committee reviewed the plans and objected to certain details. In particular, the Yoders wished to use a material on three walls of their garage known as "board and batten" siding, which is applied vertically, rather than horizontally. The Committee disapproved of this request for a number of reasons: the siding would be applied vertically, the material on the side of the house would not be the same as the exterior finish on the front, and although board and batten siding had been approved in limited instances for the trim on porches and entryways, it was not approved for siding.
 {¶ 6} Believing the Committee's decision to be arbitrary, the Yoders sent a letter to Philip Connolly, the owner of Connolly Construction Company and a member of the Committee, on August 30, 2002, requesting an explanation of the decision and stating their intent to proceed with construction utilizing the board and batten siding as indicated in the building plans. Although Connolly did not respond in writing to the Yoders' letter, he testified at trial that he had a conversation with Roger Yoder explaining the prohibition. In addition, Connolly sent a letter, dated September 3, 2002, to the Yoders' builder advising him, "[b]oard and batten is not approved as a siding option. Please select another option for garage."
 {¶ 7} Construction began on the Yoders' home and, as they had indicated, the Yoders installed the board and batten siding on three walls of their garage. On November 5, 2002, Mr. Connolly sent a letter to the Yoders stating that the Committee had become aware of the installation, had previously notified the Yoders that such siding was not acceptable, stated that they were in violation of the covenants, and asked the Yoders to correct the problem as soon as possible.
 {¶ 8} When the siding had not been corrected, Connolly filed a Complaint for Declaratory Judgment and Injunctive Relief against the Yoders on March 17, 2003. Connolly sought both declaratory judgment on its right to enter the Yoders' property and replace the materials in violation of the covenants at the cost of the Yoders and an injunction to stop the Yoders from continuing the violation of the covenants.
 {¶ 9} On April 11, 2003, the Yoders filed an answer and a counterclaim. The Yoders subsequently voluntarily dismissed their counterclaim.
 {¶ 10} A bench trial was held on July 26, 2004. At the close of Connolly's case-in-chief, which consisted of the testimony of Philip Connolly, owner of Connolly Construction Co. and Committee member, the Yoders moved for a directed verdict. The trial court found that reasonable minds could come to but one conclusion based upon the evidence presented and that conclusion was adverse to Connolly. Accordingly, the trial court granted the Yoders' motion for directed verdict. Subsequently, on a motion for attorney fees, the trial court determined that both parties acted reasonably in pursuing the instant action and awarded the Yoders $1.00 in attorney fees.
 {¶ 11} It is from this decision that Connolly and the Yoders appeal herein. Connolly asserts two assignments of error and the Yoders assert one assignment of error for our review. For clarity of analysis, we will address Connolly's assertions first.
 ASSIGNMENT OF ERROR NO. I The trial court erred in finding that enforceable covenants were notenforced because informal, unrecorded guidelines did not contain aprohibition affirmatively stated against a particular type of siding, eventhough the homeowners had knowledge of the prohibition.
 {¶ 12} Under the first assignment of error, Connolly argues that the trial court erred in its failure to enforce the recorded covenants of which the Yoders had knowledge. Moreover, Connolly asserts that the court's determination that the Yoders did not violate said covenants because the use of board and batten siding was not specifically prohibited by the Guidelines was in error.
 {¶ 13} The trial court purported to grant a motion for a directed verdict under Civ.R. 50. However, Civ.R. 50 only applies to a jury trial. In cases tried to the bench, as is the case herein, a motion for directed verdict is deemed to be a motion for involuntary dismissal pursuant to Civ.R. 41(B)(2). See Altimari v. Campbell (1978),56 Ohio App.2d 253, 256. This distinction is important because a different test is applied. The test for a motion to dismiss in a bench trial under Civ.R. 41(B)(2) is whether the plaintiff made his case by a preponderance of the evidence. Shunk v. Shunk, 7th Dist. No. 03 BE 62,2004-Ohio-7060. On review of such a dismissal, we must determine whether the trial court's judgment is against the manifest weight of the evidence or is contrary to law. Id.; C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279 at syllabus.
 {¶ 14} In directing a verdict for the Yoders, the trial court made specific determinations. Among those, the trial court found that the covenants were properly recorded and were enforceable as a matter of law. The trial court also found that the Yoders submitted their plans as required and received notice that the plan to use board and batten siding was not approved by the Committee. The trial court found that despite that notice, the Yoders continued their construction as planned. However, the trial court ruled that the Yoders did not violate the covenants or the Guidelines because, despite the specificity of the Guidelines, board and batten siding was not specifically prohibited.
 {¶ 15} Restrictive covenants containing a general building scheme or plan for development are enforceable if the covenants are not contrary to public policy. Dixon v. Van Sweringen Co. (1929), 121 Ohio St. 56, paragraph one of the syllabus. In addition, restrictive covenants requiring consent of a developer or homeowners' association for construction or improvements are enforceable if there are standards for that consent. Prestwick Landowners' Assn. v. Underhill (1980),69 Ohio App.2d 45, 49. Restrictive covenants over the use of property, however, are generally disfavored and will be strictly construed. Loblaw, Inc. v. Warren Plaza, Inc. (1955), 163 Ohio St. 581, paragraph two of the syllabus.
 {¶ 16} The covenants, which were referenced in the Yoders' deed, directed that the Declarant, Connolly Construction Co., "shall" establish the Green Pastures Architectural Review Committee to "establish, maintain and preserve specific architectural guidelines to carry out the intent of these [covenants]." Also pursuant to the covenants, the Committee was authorized and directed "to exercise its best judgment" to see that all improvements conformed to the Guidelines as to "external design, quality and types of construction, materials, colors, setting, height, grade, finished ground elevation, landscaping and tree removal." Approval was to be based, in part, on conformity and harmony of the proposed plans with the Guidelines. Moreover, the covenants declared that the actions of the Committee were to be conclusive and binding on all interested parties. Accordingly, the Guidelines, as established and applied by the Committee, had the same legal binding effect on the Yoders as the covenants which authorized the Guidelines.
 {¶ 17} The evidence indicates that the Yoders had notice of the approval process when they purchased the lot from Connolly. Accordingly, we concur with the trial court's determination that the restrictive covenants, and, therefore, the Guidelines, are enforceable. However, we find that the evidence presented reveals that the Yoders' use of board and batten siding, although not specifically prohibited, was not authorized by the established Guidelines.
 {¶ 18} Although board and batten siding was not explicitly listed in the Guidelines, Connolly introduced evidence that it had a general plan in effect which did not approve the use of the siding in the manner that the Yoders wished to utilize it. Although the Committee had approved the use of board and batten siding as trim on porches and entryways, there was no precedent for the use of such siding as a significant exterior feature and the Guidelines specifically state that "structures in [the neighborhood] will be required to be compatible." Therefore, from the evidence adduced thus far, we must conclude that the Yoders were not allowed to use board and batten siding in the manner that they used it. It was not an approved material listed in the Guidelines and the Committee, which has the authority to approve or reject building plans, specifically rejected the use of this material.
 {¶ 19} Even if we were to assume, arguendo, that board and batten siding could be used in the manner proposed by the Yoders, it appears from the record that the Yoders' submitted plan violated other provisions of the Guidelines, as well. Specifically, the Guidelines provide "[m]aterial used on the front elevation should be used consistently on the sides of the home." There is no dispute that the material used on the front of the Yoders' home is not consistent with that used on the sides.
 {¶ 20} Based on these facts, we must conclude that the trial court's decision was against the manifest weight of the evidence adduced to this point in the proceedings.
 {¶ 21} Connolly's first assignment of error is sustained.
 ASSIGNMENT OF ERROR NO. II The trial court erred as a matter of law in finding that laches barredenforcement of the covenants.
 {¶ 22} In its second assignment of error, Connolly asserts that the trial court was in error by applying the doctrine of laches to bar its claim of enforcement of the restrictive covenants against the Yoders. The Yoders pled laches as an affirmative defense in their answer. However, because the trial court granted the motion for dismissal at the end of Connolly's case, which terminated the trial, they did not present any evidence to substantiate the defense.
 {¶ 23} Laches is defined as "an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party." Akron Gen. Med. Ctr. v. Foutty (Feb. 14, 2001), 9th Dist. No. 20152, quoting Smith v. Smith (1957),107 Ohio App. 440, 443-44. To prevail under the equitable doctrine of laches, a proponent must establish: (1) unreasonable delay or lapse of time in asserting a right; (2) absence of an excuse for such delay; (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party. State ex rel. Cater v. N. Olmsted (1994),69 Ohio St.3d 315, 325. The application of the defense of laches is within the discretion of the trial court and is not overturned absent an abuse of discretion. Still v. Hayman, 153 Ohio App.3d 487,2003-Ohio-4113, ¶ 8. An abuse of discretion amounts to more than an error in judgment and demonstrates an attitude on behalf of the court that is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 24} Connolly argues that until the Yoders set forth evidence in support of the affirmative defense, it had no duty to refute such an argument and the trial court erred by applying the doctrine of laches sua sponte. The record reflects that no evidence was adduced regarding the alleged delay in filing suit during the cross-examination of Mr. Connolly, the only witness, in Connolly's case in chief. It is clear that proof to establish all elements of laches was lacking, and the Yoders have the burden of proof on the issue.
 {¶ 25} Moreover, it is an open question whether the Yoders can prove all of the elements required to establish the defense of laches. First, unreasonable delay must be established. The evidence offered prior to the court's dismissal shows that Connolly became aware that the Yoders had installed the board and batten siding by November 5, 2002. At that time, Connolly sent a letter to the Yoders notifying them that they were in violation of the covenants and requested that they remedy the violation. When no action was taken, Connolly filed suit March 17, 2003, approximately four months after the violation occurred. However, waiting a few months before filing suit to give the Yoders an opportunity to comply with the Guidelines does not seem, in and of itself, unreasonable.
 {¶ 26} Second, the Yoders must establish that Connolly had no excuse for such a delay. The evidence indicates that by sending a letter to the Yoders, Connolly gave the homeowners an opportunity to correct the violation before any legal action was taken. We note that litigation should be a last resort for the resolution of disputes and parties should be encouraged to settle their disputes short of litigation, where such is a feasible alternative. Zimmie v. Calfee, Halter and Griswold (1989),43 Ohio St.3d 54, 60. Providing a reasonable amount of time for the Yoders to remedy the ostensible violation is a justifiable reason for Connolly's delay in filing suit absent facts to the contrary.
 {¶ 27} Although there was evidence of the third element of the affirmative defense, Connolly's knowledge of the wrong, it must also be demonstrated that the Yoders were prejudiced by any delay in Connolly's assertion of its right. Based on the undisputed evidence, however, the Yoders were notified, before they began construction on the garage, that their proposed use of board and batten siding on the walls of their garage contravened the Guidelines and was not approved. Yet, they disregarded this disapproval and proceeded with construction as planned. Thus, on the state of the evidence now existing, any prejudice to the Yoders appears to have been precipitated, at least in part, by their own conduct.
 {¶ 28} After review, we find that the trial court abused its discretion in applying the doctrine of laches to bar Connolly's claim. No evidence was introduced to substantiate the affirmative defense, and it was error for the trial court to sua sponte find that the burden of proof had been met.
 {¶ 29} Connolly's second assignment of error is sustained.
 CROSS-ASSIGNMENT OF ERROR NO. I The trial court abused its discretion and committed error prejudicialto cross-appellant in awarding attorneys fees in the amount ofone-dollar.
 {¶ 30} In their sole cross-assignment of error, the Yoders contend that the trial court erred in failing to calculate the correct award of attorney fees after determining that the Yoders were the prevailing party. The Yoders assert that they were entitled to approximately $6,000 in attorney fees and the trial court erred in only awarding them $1.00. However, because we have found error herein in the trial court's grant of a directed verdict for the Yoders, we find that an award of attorney fees at this time, in any amount, is premature and, therefore, in error.
 {¶ 31} Accordingly, the Yoders' cross-assignment of error is sustained to the extent that the award of attorney fees was not timely.
 {¶ 32} Having found error prejudicial to Connolly and the Yoders herein, in the particulars assigned and argued, we reverse the judgment of the Union County Court of Common Pleas granting a directed verdict and awarding attorney fees and remand the matter for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
 Bryant and Shaw, JJ., concur.