[Cite as *Samsa v. Hess*, 2015-Ohio-429.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| SUSAN SAMSA | : | Hon. William B. Hoffman, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2014 AP 0008 |
| RICHARD HESS, ET AL | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Civil appeal from the Tuscarawas County
Court of Common Pleas, Case No.
2013CV120897

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     February 3, 2015

APPEARANCES:

For Plaintiff-Appellee     For Defendant-Appellant

ERICK BAUER     PAUL HERVEY
204 West High Avenue     140 Fair Avenue N.W.
New Philadelphia, OH 44663     New Philadelphia, OH 44663

*Gwin, J.*

{¶1} Appellants Richard and Trista Hess [collectively "Hess"] appeal the decision of the Court of Common Pleas Tuscarawas County, which ruled in favor of Appellee Susan Samsa in a dispute over the construction of a structure on appellants' property.

*Facts and Procedural History*

{¶2} Hess are the owners of a residential real estate lot, known as Lot 94 in the plat of Myer's First Subdivision as recorded in Plat Book 22, Page 6 (Plaintiff's Exhibit A). Samsa is the owner of two lots in Myer's First Subdivision and the previous owner of Hess' lot.

{¶3} Hess' lot, as well as the other lots in the Myer's First Subdivision, is subject to conditions and restrictions of record in Volume 688, Page 318 of the Tuscarawas County Deed Records (Plaintiffs Exhibit B).

{¶4} The Declaration of Covenants, Conditions and Restrictions were made November 1, 1994, by the owners of an 84.4449-acre tract, who created Myer's First Subdivision. The owners' stated purpose was to sell 9.964 acres of the tract by Lots, "restricting the Lots in accordance with a common plan designed to preserve the value and residential qualities of the Lots for benefit of its future owners."

{¶5} The owners further declared that "the Lots shall be held, transferred, encumbered, used, sold, conveyed, leased, and occupied subject to the Covenants and restrictions set forth [in the Declaration] expressly and exclusively for the use and benefit of the property and of each and every person or entity who now or in the future owns any portion or portions at the said Lots."

{¶6}  The Declaration of Covenants, Conditions and Restrictions contains the following relevant provisions:

1. No lot shall be used except for a single-family residence. No basement type dwelling shall be erected for use itself unless completed into a residential dwelling. Each lot being developed for a residence shall be completed within one (1) year from start of construction date. Additional storage sheds will be limited to one per Lot and must be of wood and or brick type (10 feet by 14 feet maximum) and first must be approved by said Grantors as to style and placement on said Lot.

* * *

2. All dwellings shall be of quality workmanship and materials substantially the same or better than that produced on the date these covenants (sic) are recorded. The ground floor of the main structure, exclusive of one-story open porches and garages, shall be not less than 1600 square feet for a one-story dwelling not less than 1800 square feet for a dwelling of more than one story.

No building or other structure shall be commenced, erected, or maintained, nor shall any addition to or change or alteration therein be made, until the plot plan showing location of buildings on the Lot, and the plans and specifications showing the nature, kind, shape, height, materials, floor plans, color scheme and approximate cost of such structure or work to be done and grading plan of the plot to be built upon shall have been submitted to and approved in writing by an authorized

agent of Grantor and a copy thereof as finally approved filed permanently with the Grantor.

* * *

5. ...Nothing shall be stored or suffered to remain outside of any dwelling house and attached garage, but all tangible property shall be stored inside.

6. No structure of a temporary character, trailer, basement, tent shack, garage, barn or other outbuilding shall be used on any Lot at any time as a residence, either temporarily or permanently. Any boats or recreational vehicles must be stored out of sight of adjoining Lot owners. No television, radio or similar towers or structures shall be erected. Any other type of construction on said Lots must be approved by the DECLARANT prior to construction.

* * *

11. The Architectural Control Committee is composed of the DECLARANT by its authorized representatives and any other designees appointed by the DECLARANT from time to time. A majority of the Committee may designate a representative to act for it. In the event of death or resignation of any member, the remaining members shall have full authority to designate a successor. The Committee, its successors and assigns, shall have the right to alter, modify, or annual any of the covenants, restrictions, and conditions of this declaration.

* * *

13. The Committee's approval or disapproval as required in these covenants shall be in writing. If the Committee fails to approve or disapprove any plans and specifications within forty-five (45) days after the plans and specifications have been submitted to it, or in any event, if no suit to enjoin the constructions has been commenced prior to the completion, approval will not be required and the related covenants shall be deemed to have been fully complied with.

14. Enforcement shall be by proceedings at law or in equity, either to restrain violation or to recover damages, against any person or persons violating or attempting to violate any covenant.

**{¶7}** The Declaration of Covenants, Conditions and Restrictions identifies the "Declarant"-owners of the lands as Esther W. Kate, Paul H. Kate, Carol J. Yackey, Dallas G. Yackey, Marilyn W. Corns and Jack W. Corns. Samsa was the daughter of two owners. Appellant Richard Hess is the nephew of Samsa.

**{¶8}** On February 6, 2014, the case proceeded as a trial before the court. The Court heard the testimony of Richard Hess, Susan Samsa, Cheryl Brugger and Mark Yackey. The Court admitted into evidence Plaintiff's Exhibits A, B and C, and Defendants' Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9 and 10. The Court also reviewed the law presented by the parties in Plaintiff's Trial Brief filed February 4, 2014 and Defendants' Trial Brief filed February 6, 2014.

**{¶9}** At trial the following evidence was presented as set forth in the trial court's judgment entry filed February 12, 2014.

{¶10} Hess purchased Lot 94 on October 31, 2013, after construction of the residential home was completed. Hess made the purchase with full knowledge of the applicable conditions and restrictions. Hess reviewed the conditions and restrictions at the closing. Richard Hess also testified that Samsa advised him to read over the deed restrictions before the construction of the building at issue.

{¶11} Approximately one week later, Hess commenced constructing an additional building on Lot 94. Hess' cousin called him right after the construction started on the building. Adjacent lot owner and brother of Samsa, Mark Yackey, also contacted Hess after the start of the construction and before a subsequent certified letter sent by an attorney for Samsa was received by Hess.

{¶12} On November 18, 2013, Hess received a letter from Samsa's attorney, acknowledging that the Hess' were constructing a building that did not comply with the Declaration of Covenants, Conditions and Restrictions. The letter advises Hess that an action for injunctive relief to prevent further construction will be filed, if necessary (Plaintiffs Exhibit C).

{¶13} Upon receipt of the letter, Hess ceased working for a few days, and then resumed construction of the building. After receipt of the letter, Hess added siding, poured the concrete, installed the electric and shingled the building.

{¶14} Appellant Richard Hess testified that he completed the construction the day before Samsa filed her Complaint, that being December 15, 2013.

{¶15} Hess built a 30' by 40', and 15' tall building, unattached from the residential home. The building includes a single garage door, larger than a standard garage door. The building is vinyl-sided. Hess testified that the purpose of the building is

to use it as a garage for his recreational vehicle. Hess' residence has an attached, two-car garage.

{¶16} Hess never submitted plans for the construction of the building to any committee or designee.

{¶17} The Court found that Hess failed to seek approval for the construction, violated the size restrictions for a storage building, disregarded advice of other lot owners and relatives to review and abide by the restrictions, and continued the construction in spite of notification from an attorney to cease. The trial court therefore granted Samsa's request for permanent injunction, and ordered Hess to remove the building.

*Assignments of Error*

{¶18} Hess was granted a stay of the trial court's judgment entry and has raised two assignments of errors,

{¶19} "I. THE TRIAL COURT ERRED WHEN IT HELD THAT THE RESTRICTIONS PROHIBITED THE BUILDING OF A GARAGE ON THE PROPERTY.

{¶20} "II. THE TRIAL COURT ERRED IN APPLYING THE RESTRICTIONS AGAINST THE APPELLANTS WHEN THE APPELLEE FAILED TO FILE SUIT BEFORE COMPLETION."

{¶21} Initially, we must note a deficiency in Hess' appellate brief. That is, Hess' appellate brief does not comply with App.R. 16(A)(7), which provides,

**(A) Brief of the appellant**

The appellant shall include in its brief, under the headings and in

the order indicated, all of the following:

***

(5) A statement of the case briefly describing the nature of the case, the course of proceedings, and the disposition in the court below.

(6) A statement of facts relevant to the assignments of error presented for review, with appropriate references to the record in accordance with division (D) of this rule.

**{¶22}** Hess' brief does not contain either a Statement of Facts or a Statement of the Case.

The omission of page references to the relevant portions of the record that support the brief's factual assertions is most troubling. Appellate attorneys should not expect the court 'to peruse the record without the help of pinpoint citations' to the record. *Day v. N. Indiana Pub. Serv. Corp.* (C.A.7, 1999), 164 F.3d 382, 384 (imposing a public reprimand and a $500 fine on an attorney for repeated noncompliance with court rules). In the absence of the page references that S.Ct.Prac.R. VI(2)(B)(3) requires, the court is forced to spend much more time hunting through the record to confirm even the most minor factual details to decide the case and prepare an opinion. That burden ought to fall on the parties rather than the court, for the parties are presumably familiar with the record and should be able to readily identify in their briefs where each relevant fact can be verified.

*State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees,* 108 Ohio St.3d 288, 843 N.E.2d 174, 2006-Ohio-903, ¶ 13; *See also, State v. Davis*, 5th Dist. Licking No.2007-CA-00104, 2008-Ohio-2418, ¶ 91.

{¶23} However, "it is a fundamental tenet of judicial review in Ohio that courts should decide cases on the merits." *DeHart v. Aetna Life Ins. Co.*, 69 Ohio St.2d 189,192, 431 N.E.2d 644(1982), *citing Cobb v. Cobb*, 62 Ohio St.2d 124, 403 N.E.2d 991(1980).

I.

{¶24} In their first assignment of error, Hess' argue the trial court erred when it held that the Declaration of Covenants, Conditions and Restrictions prohibited the Hess' from building a garage on their property.

{¶25} In *Goutras v. Dillon-McDonald*, this court held.

A restriction merely requiring submission and approval of building plans may be valid.

In order that a restrictive covenant requiring the submission to and approval of the grantor of plans for the erection of a dwelling may be valid and enforcible [sic], such covenant must be used (1) in connection with some general plan or scheme of which the grantee has notice, or (2) some other designated or stated restriction within which such approval may operate, or (3) the covenant must contain some criterion or limitation regulating the scope of such approval.

*Carranor Woods Property Owners' Assn. v. Driscoll* (1957), 106 Ohio App. 95, paragraph three of the syllabus.

5th Dist. Stark No. CA-8349, 1991 WL 207949 (Sept. 30. 1991). It is undisputed in the case at bar that Hess failed to obtain the necessary approval before or at any time during the construction of the structure in violation of the Declaration of Covenants, Conditions and Restrictions.

{¶26}  It is further undisputed in the case at bar that the structure at issue has as its purpose the storage of Hess' recreational vehicle. Hess' residence already had an attached two-car garage. Hess cannot escape the restrictions by arguing semantics.

{¶27}  A court should not enforce a restrictive covenant, by virtue of substantial changes in the character of a neighborhood, if the enforcement of the restriction would not restore the neighborhood to its originally intended character, and the enforcement would impose great hardship on the defendant with minimal benefit to the plaintiff. *Colonial Estates Home Owners Assoc., Inc. v. Burkley,* 5th Dist. Tuscarawas No. 97AP020013, 1997 WL 34724487(Oct. 7, 1997). Hess failed to prove a substantial change in the neighborhood to defeat the restrictive covenant.

{¶28}  We find the trial court did not err, as a matter of law, when it determined that the construction of the structure, by Hess was prohibited by paragraph one of the restrictive covenants. We have used the "size alone" analysis before and find its application appropriate in the case *sub judice. Colonial Estates Home Owners Assoc., Inc. v. Burkley, supra.*

{¶29}  Hess' first assignment of error is overruled.

II.

**{¶30}** In their second assignment of error, the Hess' argue that the trial court erred in applying the building restrictions because Samsa failed to file suit before the structure was completed.

**{¶31}** In finding that that the appellees were not barred from seeking enforcement of restrictive covenants by the doctrine of latches, the Court in *Connolly Construction Co. v. Yoder* observed,

> First, unreasonable delay must be established. The evidence offered prior to the court's dismissal shows that Connolly became aware that the Yoders had installed the board and batten siding by November 5, 2002. At that time, Connolly sent a letter to the Yoders notifying them that they were in violation of the covenants and requested that they remedy the violation. When no action was taken, Connolly filed suit March 17, 2003, approximately four months after the violation occurred. However, waiting a few months before filing suit to give the Yoders an opportunity to comply with the Guidelines does not seem, in and of itself, unreasonable.

> Second, the Yoders must establish that Connolly had no excuse for such a delay. The evidence indicates that by sending a letter to the Yoders, Connolly gave the homeowners an opportunity to correct the violation before any legal action was taken. We note that litigation should be a last resort for the resolution of disputes and parties should be encouraged to settle their disputes short of litigation, where such is a feasible alternative. *Zimmie v. Calfee, Halter and Griswold* (1989), 43 Ohio

St.3d 54, 60, 538 N.E.2d 398. Providing a reasonable amount of time for the Yoders to remedy the ostensible violation is a justifiable reason for Connolly's delay in filing suit absent facts to the contrary.

Although there was evidence of the third element of the affirmative defense, Connolly's knowledge of the wrong, it must also be demonstrated that the Yoders were prejudiced by any delay in Connolly's assertion of its right. Based on the undisputed evidence, however, the Yoders were notified, before they began construction on the garage, that their proposed use of board and batten siding on the walls of their garage contravened the Guidelines and was not approved. Yet, they disregarded this disapproval and proceeded with construction as planned. Thus, on the state of the evidence now existing, any prejudice to the Yoders appears to have been precipitated, at least in part, by their own conduct.

3rd Dist. Union No. 14-04-39, 2005-Ohio-4624, ¶¶25-27. *Accord, Baker v. Adams,* 3rd Dist. 8-05-17, 2006-Ohio-3232, ¶¶21-22; *DeRosa v. Parker,* 197 Ohio App.3d 332, 346-347, 2011-Ohio-6024, 967 N.E.2d 767(7th Dist.).

{¶32} In the case at bar, the trial court found the Hess' disregarded advice of other lot owners and relatives to review and abide by the restrictions, and continued the construction in spite of written notification from an attorney to cease.

{¶33} After reviewing the record, we find any delay in pursuing legal action to be reasonable. This is so because any delay stemmed from Samsa's efforts to afford the Hess' the opportunity to correct the violations at issue. *See Connolly Constr. Co. v. Yoder*, 3d Dist. No. 14-04-39, 2005-Ohio-4624, ¶ 25. We further find Samsa's efforts

constitute a valid excuse for any delay. Id. at ¶ 26. Based on these findings, we cannot say the trial court abused its discretion when it determined that defense of waiver did not bar the Samsa from enforcing the deed restrictions.

{¶34} Hess' second assignment of error is overruled.

{¶35} The judgment of the Tuscarawas Court of Common Pleas is affirmed.

By Gwin, J., and

Wise, J., concur;

Hoffman, P.J., concurs

in part; dissents in part

*Hoffman, P.J., concurring in part and dissenting in part*

{¶36} I concur in the majority's analysis and disposition of Appellants' first assignment of error.

{¶37} I respectfully dissent from the majority's analysis and disposition of Appellants' second assignment of error.  I find Section 13 of the Declaration of Covenants, Conditions and Restrictions is clear.[1]  Because, "**in any event**", no suit to enjoin construction was commenced prior to completion, approval was not required and the related covenants are deemed to have been fully complied with.

{¶38} I would sustain Appellants' second assignment of error and reverse the trial court's judgment.

_____

HON. WILLIAM B. HOFFMAN

---

[1] Because review of a written document which is unambiguous is de novo, I find the majority's utilization of an abuse of discretion standard of review inappropriate.

[Cite as *Samsa v. Hess*, 2015-Ohio-429.]