(No. WM-75-8—Decided April 2, 1976.)

*Mr. James Ian Marlatt*, for appellee.
*Messrs. Parker, Fenton & Gallagher* and *Messrs. Weaver, Weaver & Rigdon*, for appellants.

POTTER, J. The court has had the assistance of thorough briefs from counsel and a well-reasoned decision and opinion by the trial judge, the Honorable Bruce C. Huffman, who sat by assignment. Rather than paraphrase the trial court's opinion, we have quoted liberally therefrom.

The trial court found and the record so supports the facts to be as follows:

"The facts in this case, as derived from the pleadings and the evidence are, for the most part, uncontested and may be summarized as follows:

"On January 19, 1974, the Director of the Williams County Welfare Department brought to the attention of the Williams County Board of County Commissioners a request that consideration be given to locating larger office space for that department.

"After various meetings between the Director and

the Board of County Comissioners, and pursuant to the authorization of said Board of County Commissioners, the Director of Public Welfare made extensive inquiry concerning the availability of office space.

"The Director followed the various rules and regulations prescribed by the State Director of Public Welfare in locating the desired office space, which resulted in the leasing of approximately 2300 square feet of space from the Defendant, Ford-Day Investments, who proposed to build a building which would be occupied by the Welfare Department under a lease for a term of five years at an annual rental of $11,700.00, with renewal options for two additional periods of five years.

"Numerous discussions were held by the Board of County Commissioners and the Director of Public Welfare during the period of January, 1974, to January, 1975, culminating in the execution of the lease in question on January 9, 1975.

"The uncontroverted testimony established that all funds required to be spent as a result of the lease agreement, at least for the first year and one half of said lease, would be provided by the State of Ohio.

"On May 30, 1975, the Williams County Welfare Department took possession of said premises described in the lease and is presently occupying said premises.

"The Plaintiff brought this action seeking to enjoin the Board of County Commissioners from spending the funds required under said lease pursuant to Section 309.-13, Revised Code, relating to taxpayer actions.

"There is no claim that the Plaintiff has not followed the required statutory procedures for the filing of such actions.

"The lease in question has been admitted into evidence and sets forth the following facts upon its face:

"The lease is entered into by and between Ford-Day Investments (sic), as Lessor, and the Board of County Commissioners of Williams County, Ohio, as Lessee.

"After reciting the various provisions concerning description of the property, the term thereof, and the rental

payments, said lease provides that the Ford-Day Investments will commence construction of a building 'without any unnecessary delay, after this lease has been fully signed, and will endeavor to complete the construction of said building on or about May 1, 1975. Said payments under this lease shall commence the 1st of the month succeeding completion of the building, as being ready for occupancy.'

"Said lease also provides in the final paragraph thereof the following:

"'Further, it is agreed by and between both parties that the Welfare Department of Williams County, Ohio, will be occupying said building, for and during the term of this lease, and during the options for renewing said lease for two (2) consecutive five (5) year periods of time hereafter. However, it is further agreed between both parties that if for any reason the Welfare Department should not be occupying said building, then said lessee shall have the right to either occupy said building by other County offices, and have the right to sublet said lease.'

"The lease is signed by Ford-Day Investments and the Board of County Commissioners of Williams County, Ohio, by Robert C. Kunkle, Donald Kaiser, and Howard Winzler II, Commissioners.

"It is uncontroverted that no formal bidding process was undertaken by the Board of County Commissioners prior to the execution of the lease in question.

"The Commissioners did obtain rental or lease estimates by letters from various realtors and individuals in Williams County.

"It is also undisputed that no Auditor's Certificate of Availability of Funds was attached to the lease in question."

The trial court found the lease to be invalid and the defendants were permanently enjoined from the occupation of the leased premises.

Upon appeal, defendant board of county comissioners assigned the following assignment of error:

"The trial court erred in finding that section 307.02

O. R. C., as applied to the lease and purchase of real estate, was not excepted from the competitive bidding provisions of section 307.86 O. R. C."

Defendant Ford-Day Investments asserted the following arguments which we conclude are its assignments of error:

"The court erred in finding that the plaintiff-appellees had standing to maintain this action.

"The court erred in finding that the plaintiff-appellee had used reasonable diligence in prosecuting the action below and that he was not barred by the doctrines of laches and estoppel.

"The court erred in finding that the commissioners were required to comply with sections 307.86 et seq., Ohio Revised Code, where no county funds would be applied to the rental payments under the lease.

"The court erred in finding that although the commissioners had followed the procedure for acquiring leased space for the county welfare department as set forth in the regulations of the Ohio department of public welfare, that the lease was void for the reason that the commissioners failed to comply with the specific bidding requirements as set forth in sections 307.86 et seq., Ohio Revised Code."

The defendant board's sole assignment of error and the defendant Ford-Day Investments' assignments of error 3 and 4 are related to the same basic issue and will be considered together. This cause requires the interpretation and application of R. C. 307.02 and 307.86. The pertinent provisions of such sections read as follows:

"Sec. 307.02 Providing county facilities; costs and specifications; bids.

"The board of county commissioners of any county, in addition to its other powers, may purchase, for cash or by installment payments, enter into lease-purchase agreements, lease with option to purchase, lease, appropriate, construct, enlarge, improve, rebuild, equip, and furnish a courthouse, county offices, jail, county home, juvenile court building, detention home, public market houses, county children's home, community mental health facility or com-

munity mental retardation facility, *alcohol treatment and control center,* other necessary buildings * * *."

"* * * The board of county commissioners of any county may lease for a period not to exceed forty years, pursuant to a contract providing for the construction thereof under a lease-purchase plan, those buildings, structures, and other improvements enumerated in the first paragraph of this section, and in conjunction therewith, may grant leases, easements, or licenses for lands under the control of the county for a period not to exceed forty years. Such lease-purchase plan shall provide that at the end of the lease period such buildings, structures, and related improvements, together with the land on which they are situated, shall become the property of the county without cost.

"Whenever any building, structure or other improvement is to be so leased by a county, the board of county commissioners shall file with the county engineer such basic plans, specifications, bills of materials, and estimates of cost with sufficient detail to afford bidders all needed information, or alternatively, shall file the following plans, details, bills of materials, and specifications: * * *."

"Sec. 307.86 Required competitive bidding:

"Anything to be purchased, leased, leased with an option or agreement to purchase, or constructed, including, but not limited to, any product, structure, construction, reconstruction, improvement, maintenance, repair, or service, except the services of an accountant, architect, attorney at law, physician, professional engineer, *construction project manager, consultant,* surveyor, or appraiser by or on behalf of the county or contracting authority, as defined in section 307.92 of the Revised Code, at a cost in excess of two thousand dollars, except as otherwise provided in section 307.02, 3501.301 (3501.30.1), 3505.13, 5543.19, 5555.71, 5713.01, or 6137.05, of the Revised Code, shall be obtained through competitive bidding. However, competitive bidding is not required when * * *."

The Attorney General, in opinion No. 66-117, held as follows relative to R. C. 307.02:

"1. Section 307.02, Revised Code, authorizes a board of county commissioners to enter into a contract providing for the construction and lease of a building and related parking facilities for the county welfare department by other than a lease-purchase agreement. This section specifically authorizes the board to 'lease' or 'lease with option to purchase' such a building.

"2. If other than a lease-purchase plan is employed, the requirements of Section 307.02, Revised Code, regarding filing of information, publication of notice, submission of bids, and certification do not apply as the portion of the section including such requirements applies only to a lease-purchase plan."

However, as the trial court pointed out in his opinion, R. C. 307.86 was enacted and became effective after the enactment of R. C. 307.02 and the publishing of the Attorney General's opinion. See, also, Ohio Atty. Gen. Op. 70-076 in reference to House Bill 428, 1967, containing the language of R. C. 307.86.

We hold with the trial court that R. C. 307.86 is all embracive and inclusive and required that competitive bids should have been taken for the lease in question. The record indicates that while the building will be used for welfare purposes, other county functions may be housed therein, and the county has the sole responsibility to meet the obligations under the lease. We do not find that the rules and regulations of the Director of Public Welfare, if it may be concluded that they are inapposite to R. C. 307.86, supersede R. C. 307.86, or that the county may disregard R. C. 307.86 for the sole reason that welfare functions are to be conducted in the building. Competitive bidding requirements of R. C. 307.86 must be complied with. Therefore, the foregoing assignments of error are found not well taken.

Referring, now, to the first assignment of error of Ford-Day Investments, we find that the plaintiff proceeded under the provisions of R. C. 309.12 and R. C. 309.13. This was a statutory action and the plaintiff qualified as a taxpayer and followed the required statutory procedures. This assignment of error is not well taken.

The second assignment of error of Ford-Day Investments has reference to the doctrines of laches and estoppel. The trial court found that the plaintiff used reasonable diligence in prosecuting the action and was not barred by the doctrines of laches and estoppel. Further, the actions of the county commissioners being illegal, the doctrines are not applicable. See *State, ex rel. Schaefer,* v. *Bd. of County Commrs.* (1967), 11 Ohio App. 2d 132; cf. *Pincelli* v. *Ohio Bridge Corp.* (1966), 5 Ohio St. 2d 41. This assignment of error is not well taken.

The judgment of the Court of Common Pleas of Williams County is affirmed.

*Judgment affirmed.*

BROWN, P. J., and WILEY, J., concur.