JEFFERSON REGIONAL WATER AUTHORITY, Appellant,

v.

MONTGOMERY COUNTY et al., Appellees.

[Cite as *Jefferson Regional Water Auth. v. Montgomery Cty.*, 161 Ohio App.3d 310, 2005-Ohio-2755.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20750.

Decided June 3, 2005.

Ray A. Cox, for appellant.

Andrew C. Storar, for appellees Miller Valentine Partnership and 4100 Road, Ltd.

Robert Surdyk, for appellees city of Moraine, Jacqueline Cole, Herman Quillen, John Shady, Bob Rosencrans, Paul Hutchinson, Charles Howard, and Roger Matheny.

DONOVAN, Judge.

{¶ 1} Jefferson Regional Water Authority is appealing the judgment of the Montgomery County Common Pleas Court that granted summary judgment on the authority's claims to the defendants, the city of Moraine and its city commissioners (collectively, "Moraine") and Miller Valentine, a partnership.

{¶ 2} In the summer of 2000, Miller Valentine acquired land on which it planned to build a warehouse to store inventory for General Motors. The property was in Jefferson Township.[1] In September 2000, Miller Valentine representatives met with Jefferson Township zoning officials and the authority's superintendent, Mr. Gault. At that meeting, Miller Valentine explained that the facility would require a substantial water flow for fire suppression of approximately 2,500 gallons per minute for three hours. Gault explained that the authority was not able to deliver that water service to the location. Gault did not invite Miller Valentine to complete an application with the authority, nor did he indicate that the authority would consider undertaking any substantial efforts to expand its capabilities. When leaving the meeting, Gault considered the matter closed. In November 2000, Gault informed two of the authority's trustees that he had told Miller Valentine that the authority could not supply water service to the facility.

{¶ 3} Since the authority was not able to provide Miller Valentine with the requested water flow, Miller Valentine approached Montgomery County about providing the water service. Montgomery County agreed to make the necessary changes so that it could provide the requested water services to the new facility.

---

1. For reasons unrelated to this case, Miller Valentine ended up purchasing a nearby property in Moraine for the planned facility rather than the Jefferson Township property.

{¶ 4} In January 2001, the president of the authority was aware of the construction of the facility in its water district and aware that Montgomery County was planning on providing the water. In May 2001, the authority informed Montgomery County that the authority could not meet the fire-suppression needs of the facility. In August 2001, after construction on the project was completed, which included a water tower constructed by Montgomery County, the authority filed a complaint against Moraine, Miller Valentine, and Montgomery County. Montgomery County eventually negotiated a settlement with the authority and is no longer a party to the lawsuit.

{¶ 5} Miller Valentine and Moraine filed motions for summary judgment, which the trial court granted. The authority is now appealing from that judgment, raising as its sole assignment of error that the trial court erred in granting summary judgment for the defendants.

{¶ 6} The authority claims that the trial court erred in its determination that the authority's claims against Miller Valentine and Moraine are barred by laches and that the sovereign immunity statute rendered Moraine immune from the authority's state claims. We disagree.

{¶ 7} Laches is an equitable defense that bars an action as a result of an unexcused delay in bringing the action that prejudices the defendant. *Atwater v. King*, Greene App. No. 02CA45, 2003-Ohio-53, 2003 WL 77181, ¶ 19. The elements of a laches defense are "(1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." *Blankenship v. Blackwell*, 103 Ohio St.3d 567, 2004-Ohio-5596, 817 N.E.2d 382, ¶ 19. The application of the defense of laches is within the discretion of the trial court and is not overturned absent an abuse of discretion. *Still v. Hayman*, 153 Ohio App.3d 487, 2003-Ohio-4113, 794 N.E.2d 751, ¶ 8; *Thomas v. Thomas*, Franklin App. No. 03AP–1106, 2004-Ohio-2136, 2004 WL 886892, ¶ 14. An abuse of discretion amounts to more than an error in judgment and demonstrates an attitude on behalf of the court that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 8} In this case, the trial court found that the authority's claims were barred by laches. The superintendent of the authority was informed in the fall of 2000 that the facility was going to be built and that it would require a water supply. The authority's president knew in January 2001 that the facility was under construction. Yet the authority waited until August 2001, seven months after its president knew of the construction, to file its claim. By the time the authority filed its claim, Miller Valentine had completed construction of the facility and

Montgomery County had completed its additions to its water system, including the construction of a water tower. The trial court determined that the authority was not vigilant in asserting its claimed rights. As the trial court stated, the authority has offered no explanation for its delay in asserting its rights. Moreover, the trial court determined that Moraine and Miller Valentine were materially prejudiced by the authority's delay. If the authority had approached Miller Valentine and Moraine sooner, before completion of the construction, the authority's claims could have been readily resolved. But the authority never stated that it wanted to provide the water services and that it was willing to make the necessary changes to its infrastructure in order to provide the water service until the filing of its complaint. At this point, because the construction of the facility has been completed, to stop Montgomery County from providing water service when the authority does not have the facilities to provide water service would leave the facility without adequate water service, possibly resulting in the loss of a tenant for Miller Valentine and the loss of a tax-paying business for Moraine. We agree that the authority's delay has materially prejudiced the appellees. Therefore, we cannot say that the trial court abused its discretion in determining that the authority's claims against Miller Valentine and Moraine were barred by laches.

{¶ 9} Additionally, the trial court found that the authority's state claims against Moraine were barred by the sovereign-immunity statute. With stated exceptions, political subdivisions are entitled to immunity in connection with the performance of governmental or proprietary functions pursuant to R.C. 2744.02(A)(1). The statute provides:

{¶ 10} "[T]he functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

{¶ 11} R.C. 2744.01(C)(1) defines a governmental function as one of the following:

{¶ 12} "(a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement.

{¶ 13} "(b) A function that is for the common good of all citizens of the state;

{¶ 14} "(c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in

division (G)(2) of this section as a proprietary function." R.C. 2744.01(C)(1)(a) through (c).

{¶ 15} R.C. 2744.01(G)(2) provides a list of proprietary functions, including "[t]he establishment, maintenance, and operation of a utility, including, but not limited to, a light, gas, power, or heat plant, a railroad, a busline or other transit company, an airport, and a municipal corporation water supply system." R.C. 2744.01(G)(2)(c).

{¶ 16} The authority argues that the trial court erred in determining that Moraine's conduct in this case amounted to a governmental rather than a proprietary function. In support of its argument, the authority points to R.C. 2744.01(G)(2)(c). However, Moraine's actions in this matter do not amount to the establishment, maintenance, or operation of a utility. Moraine merely sought to have this revenue-making facility created in its district and to ensure that adequate water would be supplied to the facility. The authority did not present clear evidence that Moraine actively sought for Montgomery County to provide the water. By the time Moraine became involved in the matter, Miller Valentine had already attempted to get water service from the authority, which had stated that it did not have the ability to provide the needed water service, and had therefore approached Montgomery County about water service. We agree with the trial court that Moraine engaged not in a proprietary function but in a governmental function. Thus, Moraine was entitled to immunity from the authority's state claims.

{¶ 17} The trial court properly granted summary judgment to appellees, Miller Valentine and Moraine. The authority's assignment of error is without merit and is overruled.

{¶ 18} The judgment of the trial court is affirmed.

Judgment affirmed.

BROGAN, P.J., and YOUNG, J., concur.

FREDERICK N. YOUNG, J., sitting by assignment of the Chief Justice of the Supreme Court of Ohio.